IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BOBBY SMITH,                              )
                                          )
    Plaintiff,                        )
                                          )
v.                                        )        CASE NO. 2:20-cv-762-JTA
                                          )
KILOLO KIJAKAZI,                          )        (WO)
Acting Commissioner of Social Security,   )
                                          )
    Defendant.                        )

## <u>MEMORANDUM OPINION AND ORDER</u>

Pursuant to 42 U.S.C. § 405(g), the claimant, Bobby Smith ("Smith"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Smith's claim for Disability Insurance Benefits. (R. 39.) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 10, 11.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

## I.    PROCEDURAL HISTORY AND FACTS

Smith was born on September 29, 1981 (R. 163) and was 38 years old at the time of the administrative hearing held on January 22, 2020 (R. 43-74). Smith obtained his General Education Diploma. (R. 186.) He previously worked as a forklift operator and long

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

distance truck driver.  (R. 209, 217.)  On February 4, 2019, Smith protectively filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401, *et seq*.).  (R. 163.)  He alleged disability as of March 1, 2018, due to his low heart rate caused by a pacemaker, shortness of breath, recurrent pericarditis, hypertension, depression, obesity and dizziness.  (R. 163, 185.)

The Social Security Administration initially denied Smith's application on May 14, 2019 (R. 89) and he  requested a hearing before an Administrative Law Judge ("ALJ") (R. 98-99).  The ALJ held a hearing on January 22, 2020.  (R. 43-75.)  On February 18, 2020, the ALJ issued a decision that Smith was not eligible for DIB because he had not been disabled at any time since his alleged onset date through the date of the decision.  (R. 22-39.)

Smith sought review of the Commissioner's decision by the Appeals Council.  (R. 267-69.)  The Appeals Council denied review of the decision on July 29, 2020.[2]    (R. 1-3.)   On September 23, 2020, Smith filed the instant action seeking review of the Commissioner's final decision.  (Doc. No. 1.)  This matter is ripe for review.

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005).

---

[2] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

"The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB must prove that he is disabled.  *See* 20 C.F.R. § 404.1505.  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  The evaluation is made at the hearing conducted by an administrative law judge ("ALJ").  *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial gainful activity" is work activity that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P,

Appendix 1.  If such criteria are met, then the claimant is declared disabled.  20 C.F.R. §
404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ
may still find disability under the next two steps of the analysis.  At the fourth step, the
ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to
the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  The ALJ
must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R.
§ 404.1520(f).  If it is determined that the claimant is capable of performing past relevant
work, then the claimant is not disabled.  20 C.F.R. § 404.1560(b)(3).  If the ALJ finds that
the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth
and final step.  20 C.F.R. § 404.1520(g)(1).  In this final analytical step, the ALJ must
decide whether the claimant is able to perform any other relevant work corresponding with
his RFC, age, education, and work experience.  20 C.F.R. § 404.1560(c).  Here, the burden
of proof shifts from the claimant to the ALJ in proving the existence of a significant number
of jobs in the national economy that the claimant can perform given his RFC, age,
education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.    ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found
that Smith met the insured status requirements of the Social Security Act through March
31, 2021, but had not engaged in substantial gainful activity since the alleged onset date of
March 1, 2018.  (R. 27.)  The ALJ determined that Smith suffers from the following severe
impairments that significantly limit his ability to perform basic work activities: history of

pericarditis, status post pacemaker implantation, hypertension, morbid obesity, and lumbar

degenerative disc disease.  (R. 28.)  The ALJ also found that Smith has obstructive sleep

apnea and depression as non-severe impairments.  (R. 28, 30.)  Although the ALJ noted

the minimal records pertaining to Smith's alleged depression, she specifically considered

whether it imposed "any significant limitation upon his mental functioning" in the broad

functional areas of (1) understanding, remembering or applying information; (2)

interacting with others; (3) concentrating, persistence or maintaining pace; and (4) adapting

or managing oneself.  (R. 29-30.)  The ALJ found that Smith's depression caused no more

than mild limitation in any of the fuctional areas and the evidence otherwise does not

indicate that there is more than a minimal limitation in his ability to do basic work

activities.  (R. 30.)

The ALJ concluded that Smith's physical and mental impairments do not meet or

medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart

P, Appendix 1.  (R. 31.)  The ALJ explained that the record did not show that Smith

satisfied the criteria for any impairment under Listing 1.00 (Musculoskeletal System),

Listing 4.00 (Cardiovascular System), and Listing 12.00 (Mental Disorders).  (R. 31.)  The

ALJ then addressed obesity, stating:

> when obesity is found to be a medically determinable impairment, its
> effects in evaluating disability must be considered.  Specifically,
> obesity has potential effects in causing or contributing to
> musculoskeletal, respiratory, cardiovascular, or any other body
> system impairments.  The combined effects of obesity with those
> impairments may result in greater effects of each of these impairments
> and other impairments if only considered separately.  "Obesity" itself
> is a risk factor that increases an individual's chances of developing
> impairments in most body systems.  It commonly leads to, and often

> complicates, chronic disease of the cardiovascular, respiratory, and musculoskeletal body systems. However, its effect is not limited to physical impairments, but may also cause or contribute to mental impairments such as depression or subtle changes resulting in loss of mental clarity. "Obesity" may be a factor in both "meets" and "equals" determinations at Step 3 of the Sequential Evaluation [of] the listings. Since there is no longer a specific listing for obesity, a claimant with obesity can only "meet" the requirements of a listing if he or she has another impairment that by itself, meets the requirements of a listing. However, a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.

(R. 31.)

After consideration of the entire record, including Smith's symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence and other evidence, the ALJ determined that Smith retains the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), [3]

> except [he] can never climb ladders, ropes or scaffolds; can occasionally climb ramps/stairs; can occasionally balance, stoop, crouch, kneel or crawl; should avoid concentrated exposure to pulmonary irritants (dusts, fumes, gases, odors, chemical irritants, and poor ventilation), extreme heat, and humidity; and should avoid concentrated exposure to hazards such as moving machinery and unprotected heights.

(R. 32.) In assigning this RFC, the ALJ found Smith's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence. (R. 33.)

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

In support of the RFC finding, the ALJ summarized records showing that a pacemaker was implanted to stabilize Smith's bradycardia on March 1, 2018, after which his cardiac condition stabilized.  (R. 34.)   Despite persistent complaints of chest pain, Smith's blood pressure has remained within normal range, his heart size remained normal, and a cardiac stress test yielded normal results.  (R. 34-35.)  The ALJ considered Smith's use of Tylenol for pain without any prescription for his lumbar or cardiac conditions.  (R. 34, 36, 61-62.)  The ALJ also noted that Smith has not been referred for physical therapy. (R. 34.)  The ALJ found an RFC opinion by Dr. E. Russell March, Jr., ("Dr. March"), state medical consultant, to be persuasive because Dr. March's findings were supported by the record and were consistent with Smith's testimony.  (R. 35.)  Dr. March limited Smith to sedentary exertion, occasional postural activities, with a recommendation to avoid concentrated exposure to extreme heat, humidity, and pulmonary irritants  (R. 35.)  The ALJ stated that she adopted a sedentary exertion level with additional postural and environmental limitations to fully address any limitations attributable to Smith's cardiac impairment.  (R. 36.)

After consideration of the testimony from a vocational expert ("VE"), the ALJ found Smith was able to perform his past relevant work as a grain inspector.  (R. 37.)  However, because the VE estimated that there are only 45 such positions in the national economy, the ALJ alternatively found that Smith could also work as a document preparer, a trimmer, cutter and paster, and addresser.  (R. 38-39, 71, 73.)  The ALJ concluded that Smith had not been under a disability, as defined in sections 216(i) and 223(d) of the Social Security Act.  (R. 39.)

## V.    DISCUSSION

Smith presents three arguments on appeal.  First, he argues the ALJ improperly evaluated the opinion evidence regarding his mental impairment.  (Doc. No. 15 at 2-7.) Second, he argues the ALJ improperly evaluated his subjective statements.  (*Id*. at 7-12.) Third, he argues that the ALJ did not adequately consider the impact of his obesity.  (*Id*. at 12-13.)  The Court addresses each argument below.

A.    The ALJ properly evaluated the medical opinions on mental impairment.

Smith challenges the ALJ's evaluation of his depression.  Smith argues the ALJ erred by not properly evaluating the supportability and consistency of the findings from examining psychologist, Fernelle Warren, Ph.D. ("Dr. Warren").  (Doc. No. 15 at 5.)  Smith contends the ALJ improperly relied on opinions from a non-treating, non-examining state psychiatric consultant, Donald Hinton, Ph.D. ("Dr. Hinton").  (*Id*. at 7.)  Smith argues the ALJ "failed to give a good reason for accepting the opinions from a non-examining consultant . . . over the opinions from the examining mental health expert Dr. Warren." (*Id*. at 6.)  The Commissioner responds that the ALJ properly evaluated the examining and non-examining opinions of the medical sources under the current regulations.  (Doc. No. 16 at 3-8.)  The Court finds no reversible error.

Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide in pertinent part the following:

 (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).  Thus, an ALJ "may reject any medical opinion if the evidence supports a contrary finding." *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 856 (11th Cir. 2018) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280  (11th Cir. 1987)). The ALJ must consider "the persuasiveness of the content of the evidence." *Harner v. Soc. Sec. Admin., Comm'r*, ___ F.4th ___, 2022 WL 2298528, at *3 (11th Cir. June 27, 2022) (citing 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017)).  Under the revised regulations, an ALJ gauges persuasiveness according to five factors:  (1) the supportability of the medical opinion; (2) its consistency with other record evidence; (3) the physician's relationship with the claimant; (4) the physician's specialty; and (5) other relevant information such as the physician's familiarity with the other record evidence and with making a claim for disability. *Harner*, 2022 WL 2298528, at *3; *see* 20 C.F.R. § 404.1520c(c)(1-6).

Pursuant to the new regulations, the Commissioner is not required to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, No. 4:18CV693CDP, 2019 WL

3412616, *4 (E.D. Mo. July 29, 2019)). *See also Knecht v. Comm'r of Soc. Sec.*, No. 3:19-CV-000759, 2020 WL 4530725, at *7 (M.D. Pa. Aug. 6, 2020) ("Supportability and consistency are the most important factors in determining the persuasiveness of a medical source's medical opinion." (citing 20 C.F.R. § 404.1520c(b)(2)); *Stem v. Comm'r of Soc. Sec.*, No. CV 2:19-725, 2020 WL 4548056, at *2 n.1 (W.D. Pa. Aug. 6, 2020) (citations omitted) ("Consistency and supportability are the only factors ALJs must address in their written opinions.").

*Moberg v. Comm'r of Soc. Sec.*, No. 6:19-CV-891-ORL-LRH, 2020 WL 4936981, at *3 (M.D. Fla. Aug. 24, 2020).

Here, the ALJ detailed a psychiatric evaluation of Smith by Dr. Warren. (R. 29.) The ALJ then considered Dr. Warren's evaluation of Smith in assessing the broad functional areas of mental functioning. The ALJ noted that, during his examination with Dr. Warren, Smith showed no evidence of difficulties with his cognitive or memory function which is consistent with the medical treatment notes. (*Id*.) The ALJ noted that Smith complained during his evaluation with Dr. Warren of having some social withdrawal and irritability at times. (*Id*.) The ALJ also noted that Smith showed intact concentration during the evaluation with Dr. Warren. (*Id*.) The ALJ further noted that Smith stated in his evaluation with Dr. Warran that he was able to care for his children and complete some household chores, although he was limited by fatigue. (R. 30) Finally, as part of Dr. Warren's evaluation of Smith, he included a medical source statement. The ALJ assessed this statement and found it unpersuasive, stating

> [Dr. Warren] noted [Smith] had no limitations to his ability to remember or carry out instructions. However, he claimed [Smith] would have a mild to moderately impaired limitation to functioning independently, and a moderate to marked restriction to responding appropriate to others (Exhibit 6F). Regarding this statement, the undersigned finds it is not consistent with the

overall medical findings, nor is it consistent with the objective results of Dr. Warren's own evaluation of [Smith].

(*Id*.)

The ALJ also considered the mental RFC assessment of Smith that was completed by Dr. Hinton.  The ALJ noted the date of the assessment as May 14, 2019, and Dr. Hinton's conclusion that Smith had no more than a mild restriction in any mental functioning criteria.  (R. 30.)  The ALJ also noted that Dr. Hinton found Smith's psychiatric impairment to be non-severe.  (*Id*.)  The ALJ further noted that he was not bound by the finding of State agency physicians under the regulations, but nonetheless concluded that Dr. Hinton's assessment was persuasive because it was consistent with the record.  (*Id*.)

The Court has reviewed the record and finds that the ALJ's assessment of the medical opinions of Drs. Warren and Hinton was supported by substantial evidence and legally sufficient.  The ALJ's consideration of these opinions comported with the requirements of the new Social Security regulations because the ALJ articulated the evidence affecting the consistency and supportability of the opinions and determined whether each opinion was supported by the record.

Smith reported to Dr. Warren that he was happy most of the time and denied delusions/hallucinations and suicidal/homicidal thoughts.  (R. 505, 506.)  Smith also reported to Dr. Warren that he was fired from his last position "because he was giving out and having dizzy spells and not able to meet the demands of the job." (R. 505.)  Dr. Warren noted that Smith was oriented to person, place, time and date.  (R. 506.)  Dr. Warren further noted that Smith's recent and remote memory appeared to be intact, and Smith's attention was intact for conversational purposes.  (*Id*.)  Dr. Warren noted that Smith's thought

processes appeared to be within normal limits.  (*Id.*)  Dr. Warren concluded that "[o]verall, [Smith's] responses to mathematical and serial tasks, memory functions, fund of information, and ability to think in abstract terms appeared to be consistent with a level of functioning estimated to be within the [a]verage range of intelligence." (*Id.*)  As the ALJ correctly found, these objective results of Dr. Warren's own evaluation are inconsistent with his opinion that (1) Smith has a poor prognosis; (2) Smith's ability to function independently in an age appropriate matter is mildly to moderately impaired; and (3) Smith's ability to respond appropriately to supervisors, co-workers, and work pressures in a work setting is moderately to markedly impaired.  (R. 506-07.)

Dr. Hinton's opinion included a review of the medical records, statements from Smith and his wife, and Dr. Warren's evaluation.  (R. 76-83.)  Dr. Hinton assessed Smith under the agency listings for Depressive, Bipolar, and Related Disorders (12.04) and Anxiety and Obsessive-Compulsive Disorders (12.06) to find medically determinable impairments that did not meet either listing.  (R. 82.)  Dr. Hinton found mild impairment in all four domains of mental functioning.  (R. 82-83.)  The Court finds no reason to disturb the ALJ's evaluation of this opinion.

Finally, Smith's argument that the ALJ was required to give more weight to Dr. Warren, a source who examined him, over Dr. Hinton, a non-examining source, is unavailing.  Deference to an examining medical source no longer appears in the current regulations.  *See* 20 C.F.R. § 404.1520c(a) (the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical

sources.").  Therefore, the ALJ was not required to defer to the opinions of Dr. Warren over those of Dr. Hinton.

B.  The ALJ properly evaluated the subjective statements.

Smith next challenges the ALJ's evaluation of his subjective statements.  (Doc. No. 15 at 7-12.)  Smith contends the ALJ failed to provide an analysis of his allegations related to his mental impairments.  (*Id*. at 9.)  Smith also contends the ALJ failed to give appropriate reasons for discounting his statements regarding his physical limitations.  (*Id*. at 10.)  The Commissioner responds that the ALJ's decision adequately cited record evidence as grounds for his rejection of Smith's uncredited testimony.  (Doc. No. 16 at 8-12.)

Social Security Ruling ("SSR") 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ."  Soc. Sec. Ruling 16-3p, 82 Fed. Reg. 49462-03, 2017 WL 5180304 (Oct. 25, 2017).  The new ruling eliminates the use of the term "credibility" from the sub-regulatory policy and stresses that the ALJ "will not assess an individual's overall character or truthfulness" but instead will "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the [ALJ's] evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . ."  *Id*. at 49463, 49467.  "Whether before or after SSR 16–3p, an ALJ may choose to discredit a claimant's testimony about his or her symptoms."  *Ring v. Berryhill*, 241 F. Supp. 3d 1235, 1252 (N.D. Ala. 2017),

14

*aff'd sub nom. Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966 (11th Cir. 2018) (per curiam).

When evaluating a claimant's symptoms, a two-step process must be used. *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463). At step one, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463-64. At step two, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to which they limit the claimant's ability to perform work-related activities. *Id.* at 49464-66. In doing so, the ALJ must examine the entire case record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. *Id.* at 49464.

The ALJ also must consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms other than treatment; and (7) any other factors concerning the claimant's functional limitations and

restrictions due to his pain or symptoms. *Id*. at 49465-66; *see* 20 C.F.R. § 404.1529(c)(3).[4] The ALJ then must examine the claimant's statements about the intensity, persistence, and limiting effects of symptoms in relation to all other evidence and consider whether they are consistent with the record as a whole. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166, 14170 (Mar. 16, 2016)); *see also* 20 C.F.R. § 404.1529(c)(4).

The Court finds substantial evidence supports the ALJ's decision that Smith's subjective statements about his limitations were not entirely reliable. In February 2018, records from Smith's personal physician show Smith reported that he quit work to care for his children. (R. 368.) Thereafter, according to Smith's wife, his daily activities of caring

---

[4] In *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), the Eleventh Circuit "articulated the 'pain standard,' which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.' " *Id*. (quoting *Holt*, 921 F.2d at 1223). If the ALJ discredits a claimant's subjective testimony, she "must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding. *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 832 (11th Cir. 2013) (per curiam) (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true. *Holt*, 921 F.2d at 1223. When the ALJ's reasons for discrediting a claimant's statements about pain or other symptoms are clearly articulated and supported by substantial evidence in the record, a reviewing court will not disturb the ALJ's findings. *Foote*, 67 F.3d at 1562.

Notably, "SSR 16-3p provides clarification of the subjective pain standard; it does not substantively change the standard" or "the factors that an ALJ should consider when examining subjective pain testimony." *Harris v. Berryhill*, Case No.: 5:16-CV-01050-MHH, 2017 WL 4222611, at *3 n.2 (N.D. Ala. Sept. 22, 2017) (internal citation omitted); *see also Griffin v. Berryhill*, No. 4:15-cv-0974-JEO, 2017 WL 1164889, at *6 n.10 (N.D. Ala. March 29, 2017) ("The Eleventh Circuit's pain standard is consistent with the parameters that SSR 16-3p sets forth.").

for his children and performing household chores were limited by his shortness of breath and chest pain.  (R. 229-236.)   Smith's heart problems stabilized after receiving a pacemaker on March 1, 2018, and the records show normal pulse and blood pressure readings, unlabored breathing, normal heart size, and normal cardiac stress test results after that procedure, notwithstanding his consistent complaints.  (R. 34-35, 367, 395, 398-99, 482, 489, 499, 543, 545.)  Upon release from an emergency room visit in August 2018, during which Smith complained of chest pain, medical staff reported that Smith ambulated with a steady gait and was not in distress.  (R. 479-82.)  The medical records show Smith has repeatedly denied fatigue, back problems, dizziness, unsteady gait, restricted motion, and excessive stress/anxiety.  (R. 33, 395, 499, 544, 545.)  The ALJ contrasted Smith's complaint of constant back pain with his use of Tylenol for pain and no prescription for lumbar or cardiac conditions.  (R. 34, 36, 5761-62.)  The ALJ also noted that Smith has not been referred for physical therapy to relieve the alleged pain.  (R. 34.)  Nonetheless, in adopting the state agency medical recommendation that Smith be limited to sedentary exertion with occasional postural activities, the ALJ stated that a sedentary RFC would "fully address his cardiac impairment."  (R. 36.)

Credibility determinations are committed to the ALJ.  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Ybarra v. Comm'r of Soc. Sec. Admin.*, 658 F. App'x 538, 540 (11th Cir. 2016).  Courts will not disturb an ALJ's findings where the credibility finding is clearly stated and indicates specific reasons for discounting a claimant's subjective complaints of disabling pain.  *Mitchell*, 771 F.3d at 782.  In arguing that the ALJ's evaluation of his statements are not supported by substantial evidence, Smith

argues that the ALJ failed to give appropriate reasons for discounting his statements.  (Doc. No. 15 at 10.)  The Court disagrees.  The ALJ explicitly stated that Smith's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ."  (R. 33.)  The ALJ then summarizes the medical evidence, including identifying Smith's lack of prescribed medication or treatment for his lumbar degeneration, his constantly normal blood pressure readings, insignificant results from a cardiac monitor, x-ray results which did not support congestive heart failure, examinations which showed no congestive heart failure or consistent signs of recurrent pericarditis, normal cardiac stress test results, no evidence of heart murmurs or other cardiac symptoms, no signs of edema in the lower extremities, unremarkable resuls from a cardiac monitor and EKG study, and normal findings from a carotid ultrasound.  (R. 33-36.)  The ALJ noted that the medical record lacks complaints from Smith to his physician regarding a need to lie down for several hours. (R. 36.)  Thus, the ALJ stated reasons for discounting Smith's statements and the Court finds no reason to disturb the ALJ's finding.

Further, the ALJ's note that Smith stated he cannot afford to visit a neurologist for a vertigo evaluation (R. 30, 59) prompts Smith to challenge whether the ALJ formed an impermissible negative inference that he is noncompliant with medical treatment due to poverty, in violation of *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).  (Doc. No. 15 at 10-11.)  The Court first notes that the ALJ explained that while nothing in the record supports a diagnosis of vertigo, the sedentary RFC "is sufficient to address any vertigo impairment."  (R. 30-31.)  The Commissioner argues an ALJ only errs in this regard when

she draws a negative inference from a lack of treatment without considering financial impediments to medical care and that the record does not support Smith's interpretation. (Doc. No. 16 at 12 (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). The Commissioner is correct. The ALJ based her decision on the numerous inconsistencies between Smith's testimony and the medical evidence. There was no negative inference of lack of treatment due to poverty, rather, the ALJ's decision was amply supported by substantial evidence in the record. *See Ybarra,* 658 F. App'x at 541 n.2 (11th Cir. 2016) (finding error in the ALJ's failure to consider claimant's uninsured status as reason for rejecting treatment, but affirming due to substantial evidence for credibility determination).

"The question is not . . . whether [the] ALJ could have reasonably credited [Smith's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). On the record here, the ALJ's consideration of Smith's subjective complaints is supported by substantial evidence. Accordingly, the Court finds no reversible error.

C.     The ALJ properly considered obesity.

Smith argues that the ALJ committed reversible error by failing to consider the impact of obesity on his RFC in accordance with SSR 19-2p. (Doc. No. 15 at 12-13.) The Commissioner responds that the ALJ properly applied the ruling. (Doc. No. 16 at 13-15.)

An ALJ is required to consider obesity when "determining if (a) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars claimant 'from doing past relevant work and other work that exists in significant numbers in the

national economy.' " *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir.

2012). SSR 19-2p requires an ALJ "to consider the limiting effects of obesity when

assessing a person's RFC." SSR 19-2p, 2019 WL 2374244, at *2 (May 20, 2019). A

finding of obesity is not tantamount to a finding of disability. *Jones v. Berryhill*, No. CV-

118-110, 2019 WL 922255, at *4 (S.D. Ga. Jan. 28, 2019), *report and recommendation

adopted*, No. CV-118-110, 2019 WL 919007 (S.D. Ga. Feb. 25, 2019). A claimant must

present evidence that obesity impacts his ability to perform work to support a finding of

disability. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005).

Here, the ALJ acknowledged her obligation to consider Smith's obesity. The ALJ

noted "[a]lthough 'obesity' has been deleted from the Listing of Impairments in 20 CFR,

subpart P, Appendix 1, when obesity is found to be a medically determinable impairment,

its effects in evaluating disability must be considered." (R. 31.) The ALJ further noted

that "obesity has potential effects in causing or contributing to musculoskeletal, respiratory,

cardiovascular, or any other body system impairments." (R. 31.) The ALJ continued,

> The combined effects of obesity with those impairments may result in greater
> effects of each of these impairments and other impairments if only
> considered separately. "Obesity" itself is a risk factor that increases an
> individual's chances of developing impairments in most body systems. It
> commonly leads to, and often complicates, chronic disease of the
> cardiovascular, respiratory, and musculoskeletal body systems. However, its
> effect is not limited to physical impairments, but may also cause or contribute
> to mental impairments such as depression or subtle changes resulting in loss
> of mental clarity.

(R. 31.)

The ALJ then fulfilled this obligation by thoroughly reviewing Smith's medical

record for signs that his obesity impacted his RFC. The ALJ noted that "despite [Smith's]

body habitus, and history of lumbar degeneration, his joints were in good alignment, and he had no signs of tenderness in the lumbar spine, spinal dysfunction, or loss of range of motion." (R. 35.) The ALJ considered Smith's height, weight, and fluctuating body mass index ("BMI"). (R. 33, 34.) The ALJ properly stated that obesity is established by a BMI of 30.0 or higher, while a BMI of 40.0 and above is morbidly obese. (R. 33.) The ALJ also noted that Smith's BMI was 58.0 based on his testimony during the administrative hearing. (R. 33.) The ALJ considered the impact of obesity on Smith's cardiovascular and respiratory systems by citing multiple readings of Smith's normal heart, pulse, and blood pressure rates during numerous medical examinations. (R. 33-36.) The ALJ considered Smith's repeated complaints of chest pain and noted that Smith's physician in April 2019 remarked that "it was 'unlikely that [Smith] ha[d] coronary disease, instead concluding [Smith's] symptoms were likely related to acute acid reflux.'" (R. 35.) The ALJ further noted that Smith's "final medical visit within the record" in August 2019 shows that his blood pressure was within normal limits, his respiratory efforts were unlabored and without effort, his cardiac and musculoskeletal system seemed to be unremarkable, and a carotid ultrasound demonstrated normal findings. (R. 35.)

Substantial evidence supports the ALJ's application of SSR 19-2p. Though she did not reference obesity in relation to the RFC finding, the ALJ stated "in giving [Smith] every benefit of the doubt, the undersigned has restricted [him] to sedentary exertion, with additional postural and environmental limitations, to fully address his cardiac impairment." (R. 36.) The ALJ considered Smith's obesity when she listed his weight, height and BMI. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) (finding the

"record reflects that the ALJ considered [the claimant's] obesity" where the ALJ acknowledged the claimant's height and weight).  The ALJ recognized Smith's limitations due to his obesity in combination with his other impairments when she precluded him from climbing ladders, ropes, or scaffolds and found that he could occasionally climb ramps or stairs and occasionally balance, stoop, crouch, kneel or crawl.  *See Anderson v. Kijakazi*, No. 8:20-CV-947-AEP, 2021 WL 4146300, at *7 (M.D. Fla. Sept. 13, 2021) ("A review of the record establishes that the ALJ properly considered Plaintiff's obesity . . . [in holding] that Plaintiff could never climb ramps, stairs, ladders, ropes, or scaffolds and could only occasionally balance, stoop, kneel, crouch, and crawl."); *Combs v. Comm'r, Soc. Sec. Admin.*, No. 7:20-CV-00933-HNJ, 2022 WL 875021, at *9 (N.D. Ala. Mar. 23, 2022) (same).  Consequently, the record reflects that the ALJ properly considered Smith's obesity and the Court finds no reversible error.

## VI.   CONCLUSION

After review of the administrative record, and considering all of Smith's arguments, the Court finds that the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law.  Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 31st day of August, 2022.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE

22